UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARDIOLOGY CARE FOR CHILDREN INC., : <br> Plaintiff, : <br> : <br> v. : <br> : <br> PRASAD RAVI, M.D., : <br> Defendant. : | No. 5:17-cv-04743 |

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 3 – Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                                                                   **April 18, 2018**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Cardiology Care for Children, Inc. ("CCC") filed a Complaint against Defendant Prasad Ravi, M.D. in the Lancaster County Court of Common Pleas. CCC, which had entered into an employment contract with Ravi, alleges breach of contract, promissory estoppel, and unjust enrichment. The action was timely removed to this Court based on diversity jurisdiction. Ravi has filed a Motion to Dismiss. For the reasons set forth herein, this Court concludes that CCC has stated a claim, at this early stage of the proceedings, for breach of contract, the liquidated damages provision in the Employment Agreement survives the Motion to Dismiss, the promissory estoppel claim is dismissed based on the existence of the written contract, and the unjust enrichment claim is dismissed in light of CCC's agreement to withdraw the count.

## II.    BACKGROUND

The Complaint alleges that in 2016 CCC entered into an employment contract with Ravi, pursuant to which Ravi agreed to provide CCC his medical services for thirty-six months.

Compl. ¶ 7, ECF No. 1-1.  According to the Employment Agreement, Ravi's salary for the first twelve months would be $180,000, $200,000 for the second twelve months, and $210,000 for the third twelve months of employment.  Emp. Agreement ¶ 3, Compl. Ex. A, ECF No. 1-1.  Ravi's employment was contingent on him having the right to work in the United States.  Compl. ¶ 12.  *See also* Removal ¶ 10, ECF No. 1 (stating that Ravi is a citizen of the Republic of India).  Paragraph 23 of the Employment Agreement, which is attached to the Complaint, provides:

> **EAD.**  This Agreement is expressly contingent on Physician [Ravi] having the right to work in the United States including having a current, valid employment authorization document or work permit (EAD) issued by the United States Citizenship and Immigration Services.  If at any time Physician does not have an EAD, he shall return any "sign on" bonus[1] to Employer [CCC].  Physician will provide Employer with copies of Physician's EAD and any replacement or renewal of the EAD such that Employer has at all times a copy of a current, valid EAD.

Emp. Agreement ¶ 23.  According to the Complaint, Ravi began his employment on November 7, 2016.  Compl. ¶ 13.

CCC alleges that on February 6, 2017, Ravi told Dr. Chowdhury, President of CCC, that he was unwilling to apply for and obtain a Visa (which would permit him to remain in the United States and continue working for CCC), that his wife's Visa was set to expire on July 1, 2017, and that he intended on leaving the United States "sooner than later" so that he might immediately commence looking for a job in India, where he and his wife were to return.  Compl. ¶¶ 6, 16.  CCC alleges that this statement revealed Ravi's intent to forego renewal of his Visa and to leave the United States to return to India with his wife, thereby breaching the Employment Agreement without cause.  Compl. ¶¶ 17, 22.  CCC alleges that, based on Ravi's breach within the first

---

[1]  The Employment Agreement provides that Ravi would "receive a 'sign on' bonus of $10,000 ninety (90) days after Physician commences employment with Employer."  Agreement ¶ 3.  However, the "sign on" bonus was subsequently reduced to $5,000 based on Ravi's request to delay his start date with CCC.  *See* Ex. B, ECF No. 1-1.

twelve months of his employment and pursuant to the Employment Agreement, Ravi is obligated to pay CCC $200,000. Compl. ¶¶ 18, 21 (citing Emp. Agreement ¶ 14).[2]

**III.   STANDARD OF REVIEW**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to

---

[2]   The Employment Agreement states:
Physician agrees that he will repay Employer the Employer Investment if Physician leaves the employment of Employer at any time pursuant to paragraph 10(b) [addressing termination of employment for "no cause"] prior to expiration of the term in accordance with the following schedule: Two Hundred Thousand Dollars ($200,000.00) if Physician leaves employment during the first twelve (12) month period; One Hundred Thousand Dollars ($100,00.00) if Physician leaves employment during the second twelve (12) month period; and Fifty Thousand Dollars ($50,000.00) if Physician leaves employment during the third twelve (12) month period.
Emp. Agreement ¶ 14 (liquidated damages provision).

state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. ANALYSIS

### A. CCC states a claim for breach of contract based on Ravi's alleged statements regarding his intent to leave the United States and to return to India.

CCC's breach of contract claim is based on Ravi's alleged statements to Dr. Chowdhury that (1) he was unwilling to apply to renew his Visa, and (2) he intended on leaving the United States and return to India with his wife. CCC alleges that these statements indicated Ravi's clear intent to terminate his employment and constituted a breach of the Employment Agreement.

Statements or actions reflecting a party's intent to breach have been referred to as breach by anticipatory repudiation or anticipatory breach. *See* Restatement (Second) of Contracts, § 253 (1981). "[A]n anticipatory repudiation may be evidenced by words or actions, and occurs when a party reasonably indicates a rejection of the continuing obligation. The rejection itself, however, must be definite and unequivocal." *Mextel, Inc. v. Air-Shields, Inc.*, No. 01-CV-7308, 2005 U.S. Dist. LEXIS 1281, at *53 n.13 (E.D. Pa. Jan. 31, 2005) (internal citations omitted); *Total Containment, Inc. v. Environ Prods., Inc.*, 921 F. Supp. 1355, 1417 (E.D. Pa. 1995) ("In order constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform."). Further, "the threatened breach must be of sufficient gravity that, if the breach actually occurred, it would of itself give the obligee a claim for damages for total breach." Restatement (Second) of Contracts § 250 cmt. d (1981).

To the extent CCC asserts that Ravi's alleged statement that he was unwilling to apply for renewal of his Visa was an anticipatory breach, the breach of contract count fails to state a claim. CCC alleges, based solely on paragraph 23 of the Employment Agreement, that Ravi was

required to maintain a current work permit. *See* Compl. ¶ 20. However, paragraph 23 states merely that the Employment Agreement is contingent on Ravi "*having* the right to work in the United States including *having* a current, valid employment authorization document or work permit. . . ." Emp. Agreement ¶ 23 (emphasis added). Contrary to CCC's suggestion, paragraph 23 does not put an affirmative duty on Ravi to maintain a current work permit, nor are there any other provisions in the Employment Agreement in which Ravi agreed to maintain a current work permit. By contrast, the Employment Agreement specified that Ravi's employment would be terminated "for cause" for Ravi's "failure to remain Board certified" or for his "non-renewal" of his license to practice medicine in Pennsylvania. *See* Emp. Agreement ¶ 10(e)(i). The fact that the Employment Agreement does not place an affirmative duty on Ravi to maintain a current work permit, especially in light of other contract provisions that do place an affirmative duty on Ravi, is evidence that the parties did not intend to make this a condition of his employment.[3] Accordingly, because Ravi was not contractually obligated to maintain a current work permit, his alleged statement that he was unwilling to renew his Visa does not constitute a breach.

Moreover, even if Ravi had agreed to maintain a current work permit, his alleged statement that he was unwilling to renew his Visa is insufficient to state a claim because Ravi's failure to take preparatory action, such as applying to renew his work permit, does not constitute an anticipatory breach. The Third Circuit Court of Appeals has explained:

---

[3] "Under Pennsylvania law, when the language of a written contract is plain and unambiguous, the intent of the parties is embodied solely in the words of the contract itself." *Plate Fabrication & Machining, Inc. v. Beiler*, No. 05-2276, 2006 U.S. Dist. LEXIS 52, at *14 (E.D. Pa. Jan. 3, 2006) (citing *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)). *See also* 11 Williston on Contracts § 30:4 (4th ed. 2015) ("It is a generally accepted proposition that when the terms of a writing are plain and unambiguous, there is no room for interpretation or construction since the only purpose of judicial construction is to remove doubt and uncertainty.").

5
041818

> Though where affirmative action is promised mere failure to act, at the time when action has been promised, is a breach, failure to take preparatory action before the time when any performance is promised is not an anticipatory breach, even though such failure makes it impossible that performance shall take place, and though the promisor at the time of the failure intends not to perform his promise.

*McCloskey & Co. v. Minweld Steel Co.*, 220 F.2d 101, 104 (3d Cir. 1955) (quoting Williston on Contracts, Vol. 5, Sec. 1324 (1937); Corbin on Contracts, Vol. 4, Sec. 973 (1951)). CCC does not allege that Ravi's Visa had expired at the time of his alleged statement;[4] therefore, his alleged refusal to apply to renew his Visa before it expired is not an anticipatory breach. The breach of contract claim, to the extent that it is based on Ravi's alleged statement regarding renewal of his Visa, is dismissed.

The breach of contract count is also based on Ravi's alleged statements regarding his intent to return to India with his wife. The Complaint alleges: "Dr. Ravi further indicated that his wife's Visa was set to expire on July 1, 2017 and that he intended on leaving the United States 'sooner than later' so that he might immediately commence looking for a job in India, where he and his wife were to return." Compl. ¶ 16. Ravi argues in the Motion to Dismiss that his alleged statement that he would return to India "sooner *or* later" is not sufficiently clear and unequivocal to constitute an anticipatory breach. *See* Mot. Dismiss 10-11 (emphasis added). However, Ravi's alleged statement, made three months in to a three-year employment contract, is that he intended to leave "sooner *than* later." Compl. ¶ 16 (emphasis added). More importantly, the Complaint also alleges that Ravi made this statement when informing Dr. Chowdhury that his wife's Visa was set to expire on July 1, 2017, and that he intended to leave

---

[4] Any amendment in this regard would be futile because the Motion to Dismiss states that Ravi had a current Visa at the time of his alleged statements. *See* Mot. Dismiss 10-11, ECF No. 3-2.

the United States to "immediately commence"[5] looking for a job in India, where he and his wife were to return. *Id.* Construing the allegations in the Complaint in the light most favorable to CCC, which this Court must do at the motion to dismiss stage, this Court may draw the reasonable inference that Ravi's alleged statement expressed his intent to leave the United States in or about the summer of 2017, more than two years before his contract was to expire. *See Total Containment, Inc.*, 921 F. Supp. at 1417 (requiring the party's language to "be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform"). The Motion to Dismiss the breach of contract count, on this basis, is denied.

### B. The Motion to Dismiss the liquidated damages provision in the Employment Agreement is denied without prejudice.

Ravi argues in the Motion to Dismiss that the liquidated damages provision in paragraph 14 of the Employment Agreement, which requires Ravi to pay more than 111% of his salary if he breaches the contract within the first twelve months, should be dismissed or stricken because actual damages would not be difficult to assess and because it is a penalty and therefore unenforceable. Mot. Dismiss 11-13.

Under Pennsylvania law, the parties to a contract "may provide for pre-determined liquidated damages in the event one party fails to perform, particularly in circumstances where actual damages would be difficult to estimate in advance or to prove after a breach occurs." *Meyer-Chatfield v. Century Bus. Servicing, Inc.*, 732 F. Supp. 2d 514, 522 (E.D. Pa. 2010) (quoting *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002); Restatement (Second) of Contracts § 356 (1979)). Such provisions are enforceable if, at the time the parties entered into the contract, the sum agreed to was "a reasonable approximation of the

---

[5] The quotations in this sentence refer to the allegations in the Complaint, not to an exact quote attributed to Ravi.

expected loss rather than an unlawful penalty." *Perry v. H&R Block E. Enters.*, No. 04-6108, 2009 U.S. Dist. LEXIS 73759, at *8 (E.D. Pa. Aug. 18, 2009) (citing *Brinich v. Jencka*, 757 A.2d 388, 401-02 (Pa. Super. Ct. 2000)). If, however, the agreed-upon sum was disproportionate to the value of the performance promised or the actual injury, it will be deemed a penalty. *See id.* The question of whether the stipulated sum is a penalty or a valid liquidated damages provision is a question for the court, to be determined by the intention of the parties, drawn from the words of the contract and examined in the light of its subject matter and surroundings. *See Hanrahan v. Audubon Builders Inc.*, 614 A.2d 748, 750 (Pa. Super. 1992). "In short, to be permissible, a liquidated damages provision must both (1) address damages that are difficult or impossible to measure and (2) be a reasonable estimate of those damages." *ZA Consulting, L.L.C. v. Wittman*, Nos. 3941, 110378, 2002 Phila. Ct. Com. Pl. LEXIS 114, at *6 (C.P. Jan. 9, 2002). "The party asserting that the liquidated damages provision is unreasonable bears the burden of proof." *Benson v. Budget Rent a Car Sys.*, No. 08-cv-4512, 2011 U.S. Dist. LEXIS 112554, at *13 (E.D. Pa. Sep. 29, 2011).

Courts in Pennsylvania have determined that damages for loss of time in training an employee are "difficult to measure." *See Mannino v. Lazerpro, Inc.*, 76 Pa. D. & C.4th 526, 535 (C.P. 2005). This Court therefore focuses its analysis on whether the agreed-upon amount of damages in the liquidated damages provision in the Employment Agreement is unreasonable.[6]

Pursuant to the Employment Agreement, the parties stipulated that CCC's damages in the event of Ravi's breach within the first year of his employment would be ten percent greater than Ravi's annual salary, half of Ravi's salary in the second year, and less than twenty-five percent

---

[6] Ravi is not prohibited from renewing his challenge in a summary judgment motion as to whether damages are difficult to measure, but in light of *Mannino* and at this early stage of the proceedings, the liquidated damages provision satisfies this element.

of his salary in the third year.  *See* Emp. Agreement ¶¶ 3, 14.  At the motion to dismiss stage, this Court concludes that Ravi has not shown that CCC's estimated damages caused by a breach in the second and third years of Ravi's employment are unreasonable.[7]  *See Lehigh Valley Bone LLC v. Puccio*, 75 Pa. D. & C.4th 176, 186 (C.P. 2005) (determining that liquidated damages equaling half the employee's annual salary was reasonable).  Although the estimated damages during the first twelve months appears high, this Court considers that most of Ravi's training would presumptively occur within the first year of his employment.  Also, CCC agreed to provide Ravi with five days of paid time off each year to attend continuing medical education courses and reimbursement of up to $2,500 each year for such courses.  *See* Emp. Agreement ¶ 8.  Further, the parties acknowledged in the Employment Agreement the training and other investments made by CCC relating to Ravi's employment.  *Id.* at ¶ 14.  Consequently, in light of the fact that Ravi bears the burden of showing that the liquidated damages provision is unreasonable, the request to dismiss or strike this provision is denied at this early stage of the proceedings.  *See Lehigh Valley Hosp. v. Stulpin*, No. 2000-C-576, 2000 Pa. Dist. & Cnty. Dec. LEXIS 394, at *8-9 (C.P. July 14, 2000) ("At this stage of the proceeding, with only the complaint before us, we are without a sufficient factual record to conduct [the liquidated damages clause] analysis properly.").[8]

> **C. Because there is a written Employment Agreement, the promissory estoppel count is dismissed.**

Ravi argues in the Motion to Dismiss that because there is an express contract, CCC's promissory estoppel claim should be dismissed.  CCC responds that because Ravi challenges the

---

[7] This finding is without prejudice to Ravi's right to renew in a summary judgment motion if additional facts show that these amounts are unreasonable.

[8] This Court's decision is without prejudice to Ravi's right to renew this argument in a summary judgment motion and to present evidence to show that the amount is unreasonable.

liquidated damages provision of the Employment Agreement and to the extent that the provision could be ruled unenforceable, the promissory estoppel claim should survive to prevent injustice.

"Promissory estoppel allows the court to enforce a party's promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (citing *Cardamone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233 (Pa. Super. 1978) ("The doctrine of promissory estoppel is, of course, only employed to enforce a promise unsupported by consideration, in order to avoid a manifest injustice.")).

CCC's suggestion that because the liquidated damages provision could be ruled unenforceable, its promissory estoppel claim must survive to allow it to be awarded damages and to prevent injustice is unpersuasive. While Pennsylvania contract law precludes a party from seeking actual damages for a breach of contract if there is an enforceable liquidated damages clause, if the liquidated damages clause is not enforceable, then the party may seek actual damages for the breach. *See Blue Mt. Mushroom Co. v. Monterey Mushroom*, 246 F. Supp. 2d 394, 400 (E.D. Pa. 2002); *Carlos R. Leffler, Inc. v. Hutter*, 696 A.2d 157, 162 (Pa. Super. Ct. 1997). Accordingly, if the liquidated damages provision in the instant Employment Agreement is not enforceable, CCC may seek actual damages for its breach of contract claim. A promissory estoppel claim is therefore not necessary to avoid manifest injustice.

Moreover, "[u]nder Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel." *W. Chester Univ. Found. v. Metlife Ins. Co.*, 259 F. Supp. 3d 211, 222-23 (E.D. Pa. 2017) (internal quotations omitted). There is no

10
041818

dispute in this case that Ravi and CCC entered into an enforceable employment contract. In opposition to the Motion to Dismiss, CCC argues that Ravi cites no case law to support his position that a promissory estoppel claim is subject to dismissal because an express contract exists. *See* Opp. Mot. Dismiss 13. However, there is an abundance of case law supporting this position. *See, e.g. Carlson*, 918 F.2d at 416 (holding that where "the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted"); *Benchmark Grp., Inc. v. Penn Tank Lines, Inc.*, No. 07-2630, 2008 U.S. Dist. LEXIS 6959, at *1-2 (E.D. Pa. Jan. 30, 2008) (granting the motion to dismiss the promissory estoppel count because there was no dispute that the parties entered into an enforceable written agreement); *Linden v. SAP Am., Inc.*, No. 03-3125, 2004 U.S. Dist. LEXIS 8598, at *20-21 (E.D. Pa. May 6, 2004) (concluding that although breach of contract and promissory estoppel claims may be pleaded in the alternative, once the court finds that a contract exists, the promissory estoppel claim must be dismissed). Thus, in light of the written Employment Agreement, the promissory estoppel claim in Count Two is dismissed with prejudice.[9]

---

[9] This Court also considered that the promises upon which CCC based its claim for promissory estoppel were not separate and distinct from the Employment Agreement. Rather, in the promissory estoppel count, CCC alleges that it paid Ravi a generous salary in exchange for "his consent to the three (3) year term of the Agreement," that it relied upon "Ravi's commitments under the Agreement, specifically his commitment to maintain his working permits in the United States, to its detriment," and that as a result of its reliance on Ravi's promises, it suffered damages. Compl. ¶¶ 25-27. All of the promises that form the basis of the promissory estoppel count arise from the Employment Agreement and not from any subsequent promise. *Compare W. Chester Univ. Found.*, 259 F. Supp. 3d at 222-23 (dismissing the promissory estoppel count because the defendant's alleged statements were made prior to or contemporaneous with the execution of the contract), *with Ne. Power Co. v. Balcke-Durr, Inc.*, No. 97-CV-4836, 1999 U.S. Dist. LEXIS 13437, at *31-33 (E.D. Pa. Aug. 20, 1999) (determining that the existence of a written contract only excludes a promissory estoppel claim to the extent that the alleged agreement occurred prior to or contemporaneous with negotiations in forming the contract). There is no indication in the Complaint or briefs that there was any other promise or agreement; therefore, leave to amend would be futile.

D. **CCC agrees to withdraw its claim for unjust enrichment.**

In response to the Motion to Dismiss, CCC agrees to withdraw its claim for unjust enrichment in Count Three of the Complaint. *See* Opp. Mot. Dismiss 13, ECF No. 4-2. Accordingly, Count Three is dismissed.

V. **CONCLUSION**

The Motion to Dismiss the breach of contract claim is denied based only on Ravi's alleged statements regarding his intent to return to India with his wife. The request to dismiss the liquidated damages provision is also denied at this early stage of the proceedings. The Motion to Dismiss the promissory estoppel claim is granted in light of the written Employment Agreement, and Count Two is dismissed. Finally, the Motion to Dismiss the unjust enrichment claim is granted because CCC has agreed to withdraw this claim. Count Three is therefore dismissed.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

12
041818